UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ANGELICA DE LOS SANTOS; LUCIA SALAZAR; DASHA BAYS; individually, and on behalf of other members of the general public similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>PANDA EXPRESS, INC., a California corporation; PANDA RESTAURANT GROUP, INC., a California corporation, and DOES 1 through 10, inclusive,<br><br>     Defendants. | Case No:  C 10-01370 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Docket 13, 21 |

Plaintiffs are a current and two former employees of Defendants Panda Express, Inc., and Panda Restaurant Group (collectively "Defendants"), which own and operate a chain of "Panda Express" fast food restaurants throughout the country.  Plaintiffs bring the instant putative class action against Defendants, alleging that they discriminate against non-Asian applicants and employees seeking managerial positions.  The First Amended Complaint ("FAC") alleges federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), as well as supplemental state law causes of action under the California Fair Employment and Housing Act ("FEHA"), Cal.Gov.Code § 12940.

The parties are presently before the Court on Defendants' Motion to Dismiss and to Strike Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(6) and (f). Dkt. 13.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss and DENIES their motion to strike.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.      **BACKGROUND**[1]

A.      OVERVIEW

Defendants own and operate more than 1,200 Panda Express restaurants, which generate annual revenues in excess of $1 billion, and employ more than 18,000 associates. FAC ¶ 8.  Service positions at Panda Express locations are divided into three groups, in order of ascending responsibility:  (1) lower/entry level positions (i.e., cashiers and counter helpers); (2) mid-level positions (i.e., cooks, lead cashiers, lead counter helpers and assistant managers); and (3) upper level positions (i.e., general manager positions).  Id. ¶ 17.   Plaintiffs Angelica De Los Santos ("De Los Santos") a current employee, and former employees Lucia Salazar ("Salazar") and Dasha Bays ("Bays"), each aver that they were hired into entry level positions and were later denied promotions based on Defendants' policies and practices which discriminate against non-Asians.

B.      FACTS RELATING TO PLAINTIFFS

1.      **De Los Santos**

De Los Santos is a Latina who is currently employed by Defendants at the Panda Express location in Santa Rosa, California, where she has worked since October 2006.  Id. ¶ 5.  Upon hiring, De Los Santos was placed into a lower level position.  Id. ¶ 27.  Although she sought promotions to the lead cashier or counter position, her requests were denied.  Id. ¶ 28.  In July 2009, she complained to her manager (who is Asian) about not being promoted, despite having worked for Defendants for approximately three years.  Id. ¶ 29. The manager told De Los Santos that she needed more "GM Points" in order to receive a promotion.  Id.[2]  Yet, an Asian individual who had been working for only a few months and had significantly less experience at Panda Express compared to De Los Santos received a promotion to an open shift lead position.  Id.

---

[1] The following facts are taken from the FAC, which are taken as true for purposes of the instant motion to dismiss.

[2] Panda employees are informed that promotions are based on a point system called "GM Points."  FAC ¶ 24.  Points are accumulated based on length of employment and job performance.  Id.

1    In or about January 2010, De La Santos requested a promotion to a managerial

2    position.  Id. ¶ 30.  De La Santos was told that she needed to go through training before she

3    could be promoted.  Id.  However, Defendants never provided her with training

4    opportunities, despite her repeated requests.  Id.  Instead, an Asian individual was

5    promoted.  Id.

6    On March 25, 2010, De La Santos filed a charge of discrimination with the

7    California Department of Fair Employment and Housing ("DFEH") and immediately

8    received a right-to-sue letter.  Id. ¶ 31.  On April 20, 2010, she filed a complaint with the

9    United States Equal Employment Opportunity Commission ("EEOC") and received a right-

10   to-sue letter on July 7, 2010.  Id. ¶ 32.  De La Santos alleges that Defendants discriminated

11   against her on account of her race and/or national origin by failing to promote and consider

12   her for promotional opportunities on the same basis as Asian employees.  Id. ¶ 33.

13         2.      **Salazar**

14   Salazar is a Latina who worked at Panda Express in Crestwood, Illinois, from

15   September 2007 to April 2009, as a cashier/counter helper, a lower level position.  Id. ¶ 6.

16   During her year and a half tenure at Panda Express, Salazar repeatedly expressed her

17   interest in a promotion to the shift lead position (such as lead cashier or lead counter

18   position).  Id. ¶¶ 37-38.  Despite being told that she would be elevated to a lead counter

19   position, Salazar never received such a promotion.  Id.  Instead, another Asian co-worker

20   hired after Salazar and with considerably less experience than her was promoted into that

21   position.  Id.

22         3.      **Bays**

23   Bays is an African-American female who worked from July 2007 until June 2008 at

24   Panda Express in Orlando Park, Illinois, and from December 2008 until March 2009 at its

25   location Crestwood, Illinois.  Id. ¶ 8.  She worked as a cashier at both locations.  Id. ¶ 42.

26   At the time of her hiring, Bay was informed that she would receive a promotion every six

27   months, from cashier to shift lead, to assistant manager, and eventually to manager.

28   Id. ¶ 44.  Despite that representation and Bays' requests for a promotion, she was never

1    promoted.  Id.  She requested shifts longer than four hours, but only Asian employees were

2    allowed to work extended shifts.  Id. ¶ 45.  In addition, while working at the Crestwood

3    location, Bays' manager (who is Asian) made numerous racist remarks disparaging

4    African-Americans and which demonstrated her apparent preference for Asian workers.

5    Id. ¶ 46.

6        **C.    PROCEDURAL HISTORY**

7            Plaintiffs filed their FAC on September 7, 2010, in which they allege five causes of

8    action, as follows:  (1) racial discrimination – disparate impact under Title VII; (2) racial

9    discrimination – disparate treatment under Title VII; (3) racial discrimination under

10   42 U.S.C. § 1981; (4) racial discrimination – disparate impact under FEHA; and (5) racial

11   discrimination – disparate treatment under FEHA.  "Plaintiffs bring this Class Action

12   pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of a

13   Class … of all current and former non-Asian *employees* who were denied promotion to a

14   managerial position and all non-Asian *applicants* who were denied a managerial position at

15   Panda Express restaurants in the United States …."  FAC ¶ 49.[3]  Plaintiffs seek damages

16   and declaratory and injunctive relief.

17           Defendants now move to dismiss Plaintiffs' claims and/or strike certain allegations

18   on a variety of grounds:  (1) Plaintiffs' disparate impact claims (first and fourth causes of

19   action) should be dismissed for failure to exhaust administrative remedies; (2) Plaintiffs

20   lack standing to bring their class action claims; (3) Plaintiffs' disparate treatment claims

21   (second and fifth cause of action) and claim for discriminatory policies and procedures

22   (third cause of action) are not pled with sufficient factual specificity to state a claim under

23   Rule 12(b)(6); and (4) Plaintiffs' allegations regarding discriminatory hiring and pay

24   practices, training opportunities, job assignments and shift assignments should be stricken

25   under Rule 12(f).  The Court discusses each of these arguments seriatim.

26

27           [3] The pleadings are inconsistent as to whom the named Plaintiffs purport to
     represent, as earlier in the FAC, Plaintiffs allege only that Defendants discriminate "against
28   its non-Asian *employees*…."  FAC ¶ 2 (emphasis added).

## II.    LEGAL STANDARD

### A.    RULE 12(B)(1)

A complaint may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  "When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."  Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).

A Rule 12(b)(1) challenge to subject matter jurisdiction can be "facial," in which case the court assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in its favor.  Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009); Castaneda v. United States, 546 F.3d 682, 684 n.1 (9th Cir. 2008).  Or, the motion may be a "factual" or "speaking" motion, where the movant may submit materials outside the pleadings to support its motion.  In that case, "'[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'"  Colwell v. Department of Health and Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)).  However, a facial attack need not be converted to a speaking motion where "the additional facts considered by the court are contained in materials of which the court may take judicial notice."  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citation omitted).

### B.    RULE 12(B)(6)

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss for failure to state a claim, a complaint generally

1  must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8, which

2  requires that the complaint include a "short and plain statement of the claim showing that

3  the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); see also Swierkiewicz v. Sorema

4  N.A., 534 U.S. 506, 508 (2002).

5  　　　When considering a Rule 12(b)(6) motion, a court must take the allegations as true

6  and construe them in the light most favorable to plaintiff. See Knievel v. ESPN, 393 F.3d

7  1068, 1072 (9th Cir. 2005). However, "the tenet that a court must accept as true all of the

8  allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

9  recitals of the elements of a cause of action, supported by mere conclusory statements, do

10  not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "While legal

11  conclusions can provide the complaint's framework, they must be supported by factual

12  allegations." Id. at 1950. Those facts must be sufficient to push the claims "across the line

13  from conceivable to plausible[.]" Id. at 1951 (quoting Bell Atl. Corp. v. Twombly, 550

14  U.S. 544, 557 (2007)). Ultimately, the allegations must "give the defendant fair notice of

15  what the … claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555

16  (internal quotations and citation omitted).

17  **III.   DISCUSSION**

18  　　　**A.   DISPARATE IMPACT CLAIMS**

19  　　　To establish subject matter jurisdiction over a Title VII claim, a plaintiff alleging

20  federal employment discrimination claims must first exhaust his administrative remedies.

21  EEOC v. Farmer Bros. Co., 31 F.3d 891, 898 (9th Cir. 1994). "[T]he jurisdictional scope

22  of a Title VII claimant's court action depends both on the EEOC charge and the EEOC

23  investigation." Green v. Los Angeles County Sup. of Schools, 883 F.2d 1472, 1476 (9th

24  Cir. 1989). Federal courts have jurisdiction to consider the conduct alleged in the EEOC

25  charge and that which is "likely or reasonably related to the allegations made in the EEOC

26  charge." B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002). Subject matter

27  jurisdiction also extends over all allegations of discrimination that either "fell within the

28  scope of the EEOC's actual investigation or an EEOC investigation which can reasonably

be expected to grow out of the charge of discrimination." <u>Farmer Bros.</u>, 31 F.3d at 899 (citations omitted).  Likewise, "[t]he timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA." <u>Romano v. Rockwell Int'l Inc.</u>, 14 Cal. 4th 479, 492 (1996).  Similar to Title VII, claims in a civil action are deemed exhausted if they are "like or reasonably related" to the conduct alleged in the DFEH complaint.  <u>See</u> <u>Sandhu v. Lockheed Missiles & Space Co.</u>, 26 Cal.App.4th 846, 858-859 (1994).[4]  Charges filed before the EEOC and DFEH are to be construed "liberally."  <u>Josephs v. Pacific Bell</u>, 443 F.3d 1050, 1061-62 (9th Cir. 2006).

The issue presented is whether Plaintiffs exhausted their claims for disparate *impact*.  Disparate treatment and disparate impact discrimination claims are separate and distinct.  <u>See</u> <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 52-53 (2003).  "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision.  By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  <u>Id.</u>  In view of this distinction, federal courts in general have concluded that an administrative charge that only alleges a discrimination claim based on disparate treatment is insufficient to exhaust a claim for disparate impact—and vice-versa.  <u>See</u> <u>Brown v. Puget Sound Elec. Apprenticeship & Training Trust</u>, 732 F.2d 726, 730 (9th Cir. 1984) (disparate impact charge did not encompass disparate treatment claim); <u>Donaldson v. Microsoft Corp.</u>, 205 F.R.D. 558, 571 (W.D. Wash. 2001) (disparate treatment charge did not exhaust disparate impact claim); <u>Goethe v. Cal., Dept. of Motor Vehicles</u>, No. 2:07-CV-01945-MCE-GGH, 2008 WL 489554, at *6 (E.D. Cal. Feb. 20, 2008) ("Because Plaintiff pled only facts that

---

[4] Although an unexhausted FEHA claim is subject to dismissal, such dismissal is not for lack of subject matter jurisdiction.  <u>Rodriguez v. Airborne Exp.</u>, 265 F.3d 890, 900 (9th Cir. 2001) ("Although California courts describe exhaustion as a jurisdictional prerequisite to suit under FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction.").

1  would reasonably have led to an investigation of disparate treatment or retaliation, he failed

2  to exhaust his administrative remedies, and this Court lacks jurisdiction over … his

3  disparate impact claim.").

4      Defendants contend that De La Santos' EEOC charge only alleged that Defendants'

5  engaged in intentional discrimination and that it made no mention of any neutral

6  employment policies or practices that disproportionately harmed non-Asians.  Defs.' Mot.

7  at 8-9, Dkt. 13.  Plaintiffs respond that De La Santos, in fact, identified a facially-neutral

8  policy by mentioning the GM Points system in her EEOC charge.  Pls.' Opp'n at 16-17.  In

9  Section V of her EEOC charge, De La Santos stated:

> Also, before January 2010, on numerous occasions, I
> complained to my assistant manager and manager, who are
> Asian, about not being promoted despite the fact that I had been
> working at Panda Express for about three years.  *My manager
> told me I needed to raise my GM Points to get a promotion.*
> Instead, an Asian individual, who had only been working for a
> couple of months and had significantly less experience than I,
> was promoted to the available shift lead position.

15  Boddy Decl. Ex. A at 2, Dkt. 14 (emphasis added).  This passing reference to the GM

16  Points program neither states nor implies that it had any disparate impact on De La Santos

17  or any other employee.  See Donaldson, 205 F.R.D. at 570 (finding that plaintiff's mere

18  mention of a "bell-curve" system in her EEOC charge was insufficient to exhaust disparate

19  impact claim where there was no claim that such system was "a source of disparate

20  impact").   Indeed, in the context presented, it is apparent that the reference to GM Points

21  was intended to convey that Defendants were relying on that point system as a pretext for

22  promoting an Asian employee over her.  Notably, GM Points is *not* listed among the

23  allegedly discriminatory "policies and practices" employed by Defendants that Plaintiffs

24  assert "had the effect of denying equal job opportunities to qualified non-Asian

25  individuals."  FAC ¶ 25.

26      Alternatively, Plaintiffs contend that their disparate impact claim is "like or

27  reasonably related" to their claim based on disparate treatment.  The authority cited by

28  Plaintiffs, however, is inapposite.  In Sosa v. Hiraoka, 920 F.2d 1451 (9th Cir. 1990), the

court held that plaintiff's claim in his EEOC charge that defendants had engaged in a "pattern and practice" of retaliation and discrimination was sufficient to include his uncharged unequal pay claim, which had accrued prior to the 180-day limitations period. Id. at 1457-58.  Sosa did not address the situation presented here, where the claim alleged in the EEOC charge is for intentional discrimination, while the uncharged claim requires no showing of discriminatory intent.  See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 988 (1988) (noting that while disparate treatment claims require proof of discriminatory intent, disparate impact claims do not).[5]  In sum, the Court finds that Plaintiffs have failed to exhaust their claims for disparate treatment, and therefore, dismisses the first and fourth causes of action.

### B.   DISPARATE TREATMENT CLAIMS

Plaintiffs' second cause of action under Title VII and fifth cause of action under FEHA are disparate treatment claims based on Defendants' alleged discrimination against non-Asian applicants seeking managerial positions and non-Asian employees seeking promotions into such positions.  Defendants seek dismissal of these claims based on lack of standing and insufficiency of the allegations supporting these claims.

#### 1.   Standing

Standing under Article III of the United States Constitution is a threshold requirement in every civil action filed in federal court.  U.S. Const., art. III, § 2, cl. 1; Elk Grove Unified Sch. Dist. v. Newdow, 524 U.S. 1, 11 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action.").  To satisfy the standing requirement of Article III, there must be the "irreducible constitutional minimum"

---

[5] Plaintiffs also cite McClain v. Lufkin Indus., Inc., 519 F.3d 264, 275 (5th Cir. 2008), where the Fifth Circuit found that the plaintiff had exhausted his disparate impact claims based on allegations in his EEOC charge that he was constructively discharged, denied promotional and training opportunities and overloaded with work, and that defendants have "similarly discriminated against other black African Americans."  Id. However, the court provided no analysis to support this conclusion other than to note that the defendant had not challenged whether plaintiff had exhausted his "neutral, company policy" claim in the trial court.  Id.  Given the circumstances presented in that case, the Court finds that McClain is unpersuasive and, in any event, is not controlling.

of an injury-in-fact.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical."  Id. (internal citations and quotation marks omitted).  "Standing is determined as of the commencement of litigation."  Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002).  The party seeking relief "bears the burden of showing that he has standing for each type of relief sought."  Summers v. Earth Island Inst., --- U.S. ---, ---, 129 S.Ct. 1142, 1149 (2009).   A class representative must, in addition to being a member of the class he purports to represent, establish the existence of a case or controversy, i.e., have standing himself to sue.  O'Shea v. Littleton, 414 U.S. 488, 494 (1974).  "If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'"  Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir. 1990) (quoting O'Shea, 414 U.S. at 494).

*a)*      *Failure to Hire*

The FAC states that "Plaintiffs bring this Class Action … on behalf of a Class … of all [1] current and former *employees* who were denied a managerial position and [2] all non-Asian *applicants* who were denied a managerial position at Panda Express restaurants in the United States …."  FAC ¶ 49 (bracketed text and emphasis added).   Here, none of the named Plaintiffs were "applicants" for any managerial position at Panda Express.  Rather, each of the three Plaintiffs is or has been "employed by" Defendants when they sought, but were denied, promotions to a managerial position.  FAC ¶¶ 28, 35, 38, 39, 42.  Plaintiffs acknowledge that none of them were "applicants," but instead, insist that their claim is in reality "a claim that Defendants fail to hire non-Asian employees *directly* into managerial positions."  Pls.' Opp'n at 18, Dkt. 31.  That is not alleged in the FAC.  But even if it were, Plaintiffs miss the point.  Since none of them were applicants who were not hired for a managerial position, they lack standing to bring such a claim.  See Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1000 n.7 (9th Cir. 2006) ("It is well settled that '[a]t least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class.'") (quoting Casey v. Lewis, 4 F.3d 1516, 1519

1   (9th Cir. 1993)).  Accordingly, Plaintiffs' disparate treatment claims, to the extent they are

2   based on a failure to hire, are dismissed for lack of standing.

3                              *b)      Failure to Promote*

4          Next, Defendants argue that Plaintiffs lack standing to bring a failure to promote

5   claim with respect to any position other than shift lead because they have not alleged that

6   they sought or were qualified for a promotion *to any other managerial position*, such as

7   head chef, assistant manager and manager.  Defs.' Mot. at 18-19.  Defendants fail to cite

8   any decisional authority to support the proposition that a plaintiff has standing to assert a

9   failure to promote claim *only* as to the particular position for which he or she sought a

10  promotion.  Moreover, Defendants ignore that the injury alleged by Plaintiffs is

11  Defendants' alleged refusal to promote non-Asian employees to managerial positions.

12  Plaintiffs have expressly alleged they suffered actual injury as a result of Defendants'

13  conduct in this regard, which is sufficient for purposes of standing.  The Court therefore

14  rejects Defendants' contention that Plaintiffs' failure to promote claims should be

15  dismissed for lack of standing.

16                  **2.      Sufficiency of Allegations**

17         Title VII provides that employers may not "discriminate against any individual with

18  respect to his compensation, terms, conditions, or privileges of employment, because of

19  such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).

20  FEHA similarly proscribes such conduct.  Cal. Gov. Code § 12940(a).[6]  To state a claim

21  under Title VII or FEHA, a plaintiff need only provide "a short and plain statement of the

22  claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2).

23  Swierkiewicz, 534 U.S. at 514 (holding that allegations that plaintiff was terminated on

24  account of his national origin and age along with details of "the events leading to his

25  termination, provided relevant dates, and included the ages and nationalities of at least

26

27         [6] Disparate treatment claims under Title VII and the FEHA are analyzed under the
    same rules.  Mixon v. Fair Emp't & Hous. Comm'n, 192 Cal.App.3d 1306, 1316-17 (1987).
28

some of the relevant persons involved with his termination" satisfied requirements of Rule 8(a)).

Defendants contend that Plaintiffs failure to promote claim is deficiently pled on the ground that they have failed to allege a prima facie case of discrimination in that none of Plaintiffs allege they were qualified to receive a promotion.  Defs.' Mot. at 14.  To establish a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) for failure to promote due to racial discrimination, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for an open job; (3) she was rejected for that job; and (4) rather than filling the position the employer left it open or filled it with a worker outside the protected class at issue.  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122-23 (9th Cir. 2004).  "The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement.  Swierkiewicz, 534 U.S. at 509.  Consequently, "an employment discrimination plaintiff need not plead a prima facie case of discrimination …."  Id. at 515.

Alternatively, Defendants contend that Plaintiffs' allegations are too conclusory under Twombly and Iqbal to state claims for disparate treatment.  Defs.' Reply at 6.  This contention also lacks merit.  The FAC alleges that Plaintiffs are non-Asians who actively sought promotions but never received them.   FAC ¶¶ 26-30, 27-39, 42-44.  In the case of De La Santo and Salazar, the FAC alleges that Asian employees with less experience were promoted in their stead.  Id. ¶¶ 29-30, 38.  As to Bays, the pleadings allege that Bays' manager, who is Asian, made racist remarks, such as that African-Americans "can't be trusted with money" and "Black girls have big butts, which makes them slow employees." Id. ¶ 46.  The manager also expressed a preference for Asian workers.  Id.  From these and other allegations, it is apparent that Plaintiffs have done more than merely recite "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]"  See Twombly, 550 U.S. at 555.  To the contrary, Plaintiffs have alleged facts sufficient to provide Defendants with fair notice of the claims being alleged against them.  Id.

1    Defendants' motion to dismiss Plaintiff's disparate treatment claim based upon a failure to

2    promote non-Asian employees is therefore denied.

3        **C.    DISCRIMINATORY PRACTICES UNDER 42 U.S.C. § 1981**

4        Defendants argue that the FAC fails to state a claim for relief under 42 U.S.C.

5    § 1981.  "Among other things, § 1981 guarantees 'all persons' the right to 'make and

6    enforce contracts.'  This right includes the right to the 'enjoyment of all benefits, privileges,

7    terms, and conditions of the Contractual relationship,' including the relationship between

8    employer and employee.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1122 (9th

9    Cir. 2008) (internal citations omitted) (quoting 42 U.S.C. § 1981(a)).  The same elements of

10   proof are required for claims brought under Title VII and 42 U.S.C. § 1981.  See Maduka v.

11   Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004).

12       In their § 1981 claim, the FAC alleges that Defendants' "discriminatory policies or

13   practices … have denied managerial positions to qualified non-Asian employees in favor of

14   Asian employees, resulting in loss of past and future wages and other job benefits."  FAC

15   ¶ 84.  Elsewhere in the pleadings, Plaintiffs cite examples of such policies and practices as

16   including, without limitation:  misinforming non-Asian employees about the requirements

17   for advancement; failing to timely notify non-Asian employees of promotional

18   opportunities; denying non-Asians the requisite training for a promotion; and applying

19   different criteria for promoting Asians versus non-Asians.  FAC ¶ 25.  Defendants argue

20   that these and Plaintiffs' other examples of discriminatory policies and practices are too

21   vague and conclusory to state a claim.  Defs.' Mot. at 20-22.  The Court disagrees.  The

22   FAC provides Defendants with "fair notice" of the policies and practices that Plaintiffs aver

23   are discriminatory.  The specific details underlying Plaintiffs' allegations may be obtained

24   through discovery.  Swierkiewicz, 534 U.S. at 512 ("[The] simplified notice pleading

25   standard relies on liberal discovery rules and summary judgment motions to define disputed

26   facts and issues and to dispose of unmeritorious claims.").  Defendants' motion to dismiss

27   Plaintiffs' § 1981 claim is therefore denied.

28

**D.    MOTION TO STRIKE**

Under Rule 12(f), the Court has discretion to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 974 (9th Cir. 2010) (internal quotations and citation omitted).   "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  <u>Id.</u> (internal quotations and citations omitted).  "Striking a party's pleading, however, is an extreme and disfavored measure." <u>BJC Health System v. Columbia Cas. Co.</u>, 478 F.3d 908, 917 (8th Cir. 2007)

Defendants argue that the Court should strike Plaintiffs' allegations regarding "pay practices, training opportunities, job assignments, and shift assignments" on the ground that they are not relevant to Plaintiffs' failure to promote claims.  Defs.' Mot. at 12.  This contention lacks merit.  These allegations are germane to Defendants' alleged practice of favoring Asian employees over non-Asian employees with respect to advancing within Defendants' organization.  Accordingly, Defendants' motion to strike these allegations is denied.[7]

//
//
//
//
//

---

[7] Defendants' motion to strike Plaintiffs' allegations regarding Defendants' discriminatory hiring practices pertaining to applicants is mooted by the Court's dismissal of such claims.

IV.   <u>CONCLUSION</u>

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.     Defendants' motion to dismiss and strike is GRANTED IN PART and DENIED IN PART.  The motion to dismiss is GRANTED with respect to:  (a) Plaintiffs' first and fourth causes of action for disparate impact, which are dismissed for failure to exhaust administrative remedies; and (b) Plaintiffs' second and fifth causes of action for disparate treatment based on a failure to hire, which are dismissed for lack of standing. Defendants' motion is DENIED in all other respects.

2.     Defendants shall have fourteen (14) days from the date this Order is filed to file their responsive pleading to the FAC.

3.     The parties shall appear for a telephonic Case Management Conference on **March1 7, 2011 at 3:30 p.m.**  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  The statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

4.     The motion hearing scheduled for December 7, 2010, is VACATED.

5.     This Order terminates Docket 13 and 21.

IT IS SO ORDERED.

Dated:  December 3, 2010

_Saundra B Armstrong_

SAUNDRA BROWN ARMSTRONG
United States District Judge